**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**No. 17-6447**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CHRISTIAN M. ALLMENDINGER,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Robert E. Payne, Senior District Judge. (3:10-cr-00248-REP-1; 3:14-cv-00375-REP)

Argued: May 9, 2018                                     Decided: June 26, 2018

Before GREGORY, Chief Judge, and MOTZ and KEENAN, Circuit Judges.

Vacated and remanded by published opinion. Judge Motz wrote the opinion, in which Chief Judge Gregory and Judge Keenan joined.

**ARGUED:** William Joseph Gonyea, Jr., JOE GONYEA, ATTORNEY AT LAW, Houston, Texas, for Appellant. Jessica D. Aber, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Dana J. Boente, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

DIANA GRIBBON MOTZ, Circuit Judge:

Christian M. Allmendinger was convicted and sentenced for money laundering and other crimes relating to a fraudulent investment scheme. *United States v. Allmendinger*, 706 F.3d 330, 333 (4th Cir. 2013). On direct appeal, his counsel failed to raise a significant and obvious issue that, if raised, likely would have resulted in the reversal of Allmendinger's money laundering convictions. In the present proceedings under 28 U.S.C. § 2255, the district court found that this failure did not amount to ineffective assistance of counsel. Allmendinger appeals. For the reasons set forth within, we disagree and so vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

I.

Allmendinger and an associate founded a company known as "A & O," which sold interests in life insurance policies to investors. Allmendinger hired Adley Abdulwahab to help market A & O's products; Abdulwahab subsequently joined A & O as a partner. When marketing these products, Allmendinger and Abdulwahab "lied about many critical facts" and misrepresented their company's "size, staff, and record of earning returns for its investors." *Allmendinger*, 706 F.3d at 333–34. They also misappropriated millions of dollars for their personal benefit. The fraudulent scheme ultimately collapsed, causing A & O's investors to lose roughly $100 million. *Id.* at 333.

2

A grand jury indicted Allmendinger and Abdulwahab for various crimes related to these actions. *Id.* at 335.[1] They proceeded to separate trials. In the first trial, a jury found Allmendinger guilty of mail fraud, conspiracy to commit mail fraud, securities fraud, conspiracy to commit money laundering, and — of particular importance here — two counts of money laundering. *Id.* at 336. In the second trial, a jury found Abdulwahab guilty of mail fraud, conspiracy to commit mail fraud, securities fraud, conspiracy to commit money laundering, and money laundering. *Id.* at 336 n.3.

The same district court judge sentenced both Allmendinger and Abdulwahab. Allmendinger received a sentence of 540 months' imprisonment, well within the Sentencing Guidelines advisory range (life imprisonment capped by a statutory maximum of 1,500 months). *Id.* at 337–38. The judge sentenced Abdulwahab to 720 months' imprisonment. *United States v. Abdulwahab*, 715 F.3d 521, 528 (4th Cir. 2013). Both defendants appealed.

Allmendinger noted his appeal in November 2011, and we heard oral argument in December 2012. Allmendinger's appellate counsel made four principal arguments. First, counsel claimed that the district court had violated Allmendinger's Fifth Amendment rights by altering the superseding indictment mid-trial. *Allmendinger*, 706 F.3d at 338–340. Second, counsel contended that the sentence was substantively unreasonable. *Id.* at 343–44. Third, counsel maintained that the sentence was procedurally unreasonable, because the district court erred in calculating the amount of loss attributable to Allmendinger under

---

[1] Prior to the trials, the grand jury returned a superseding indictment against both men. *Allmendinger*, 706 F.3d at 335.

the Guidelines. *Id.* at 340–43. Fourth, counsel asserted that the sentence was also procedurally unreasonable because the sentencing court failed to address Allmendinger's argument that the sentence created an unwarranted disparity with the sentences of similarly situated defendants. *Id.* at 343. We rejected all of these arguments and affirmed both the conviction and sentence in an opinion issued on January 23, 2013. *Id.* at 344.

On January 29, 2013, we heard oral argument in Abdulwahab's companion appeal. His appellate counsel raised an issue not addressed in Allmendinger's appeal, namely, that the "merger problem" identified in *United States v. Santos*, 553 U.S. 507 (2008), barred Abdulwahab's money laundering convictions. We agreed. *Abdulwahab*, 715 F.3d at 529–32. Accordingly, we reversed Abdulwahab's money laundering convictions, vacated his sentence, and remanded for resentencing. *Id.* at 535. On remand, the district court imposed the same sentence. *See United States v. Abdulwahab*, 2016 WL 2349109, at *2 (E.D. Va. May 3, 2016).

Allmendinger, represented by new counsel, then filed this § 2255 action, claiming, *inter alia*, that his original appellate counsel provided ineffective representation by failing to raise the merger problem. The district court ordered that counsel to respond and, in a sworn declaration, appellate counsel explained that he had "specifically considered" raising the merger problem on appeal but decided not to, for strategic reasons. In particular, he "did not believe this issue, even if successful, would ultimately lead to a reduction of Mr. Allmendinger's sentence," and counsel did not want to "risk detracting from other issues that [he] believed had a greater likelihood, if successful, of significantly reducing" the sentence. In appellate counsel's view, "[s]imply obtaining the reversal of a single count or

4

two in a fashion that in all likelihood would not impact the sentence was not . . . a desirable outcome." Rather, counsel "wanted to focus the Court of Appeals on what [he] believed to be the strongest grounds for appeal that might result in the reversal of all counts or could have a significant impact on the sentence."

The district court denied habeas relief, rejecting Allmendinger's ineffective assistance claim. The court agreed that a merger problem existed and opined that, had Allmendinger's appellate counsel raised the issue on direct appeal, we would have overturned the money laundering convictions. Nonetheless, the district court concluded that failure to raise this issue did not amount to ineffective assistance because Allmendinger failed to meet either prong of the two-pronged test for performance and prejudice, as required by *Strickland v. Washington*, 466 U.S. 668 (1984).

As to the performance prong, the district court found that appellate counsel's failure to assert the "merger problem" constituted a "reasonable tactical decision." The court explained that reversal of the money laundering convictions "would have had no impact" on Allmendinger's sentence. For largely the same reason, the court held that Allmendinger also had failed to establish prejudice under the second prong because, even absent the money laundering charges, the court "could — and would — have sentenced him again to 540 months of imprisonment."

Habeas counsel timely noted this appeal. We granted a Certificate of Appealability on the question of "whether Allmendinger's appellate counsel rendered ineffective assistance in failing to present an argument premised on the merger problem articulated in *United States v. Santos*, 553 U.S. 507 (2008)."

5

"Th[e] right to effective assistance of counsel extends to require such assistance on direct appeal . . . ." *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (en banc). "In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, [a petitioner] must normally demonstrate" both deficient performance, meaning "that his 'counsel's representation fell below an objective standard of reasonableness' in light of the prevailing professional norms," and prejudice, meaning "that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 688, 694). "Whether counsel's performance was constitutionally adequate is a mixed question of law and fact which we review *de novo*." *Savino v. Murray*, 82 F.3d 593, 598 (4th Cir. 1996).

## II.

Under the first *Strickland* prong, Allmendinger must show that his appellate counsel's performance was deficient. With respect to performance, "[e]ffective assistance of appellate counsel does not require the presentation of all issues on appeal that may have merit." *United States v. Mason*, 774 F.3d 824, 828–29 (4th Cir. 2014) (internal quotation marks and citation omitted). Indeed, "winnowing out weaker arguments on appeal and focusing on those more likely to prevail . . . is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (internal quotation marks and citation omitted). But appellate counsel may render deficient performance by failing to raise "issues [that] are clearly stronger than those presented." *Mason*, 774 F.3d at 829 (internal quotation marks and citation omitted); *see also Mayo v. Henderson*, 13 F.3d 528,

6

533 (2d Cir. 1994). The ineffective assistance inquiry therefore requires a court to compare the strength of an issue not raised on direct appeal (here, the merger problem) with the strength of arguments that were raised. *See Mason*, 774 F.3d at 829.

We start by examining the issue not raised on direct appeal — the merger problem — and then consider the issues appellate counsel did raise. We focus on the reasonableness of appellate counsel's conduct viewed as of the time of that conduct. *See Strickland*, 466 U.S. at 690.

### A.

When a defendant's crime involves the use of "money transactions to pay for the costs of the illegal activity," the government cannot use those same money transactions to also "prosecute the defendant for money laundering." *United States v. Halstead*, 634 F.3d 270, 279 (4th Cir. 2011). This is known as a merger problem. As we have held, a merger problem occurs when the government attempts to convict a defendant of "money laundering for paying the 'essential expenses of operating' the underlying crime." *Id.* (quoting *Santos*, 553 U.S. at 528 (Stevens, J., concurring)). In contrast, no merger problem arises "when the financial transactions of the predicate offense are different from the transactions prosecuted as money laundering." *Id.* at 279–80.

In *Abdulwahab*, we held that a merger problem existed with respect to the money laundering counts against Abdulwahab. For that reason, we reversed Abdulwahab's money laundering convictions. *Abdulwahab*, 715 F.3d at 529–32. Our decision in *Abdulwahab* signals that the same problem exists with respect to the money laundering counts against Allmendinger, because the counts against both men rested on commission payments that

7

they made to a sales agent, who sold A & O products to investors. As we explained in *Abdulwahab*, these payments "were for services that played a critical role in the underlying fraud scheme in that it was the promise of payment for services rendered that enticed [the sales agent] to obtain investors for A & O." Thus, "the commission payments were essential expenses of the illegal activity." *Id.* at 531.[2]

Nevertheless, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight," *Strickland*, 466 U.S. at 689, and so our analysis must focus on the strength of the merger argument at the time that Allmendinger's appellate counsel failed to raise it.

The Government maintains that because we published our decision in *Abdulwahab* after Allmendinger's appeal had concluded, it "was not guaranteed" that this issue would prevail when Allmendinger's appellate counsel made his arguments on direct appeal. Appellee Br. at 15. But in fact, given our circuit precedent, at the time appellate counsel

---

[2] The money laundering statute under which Allmendinger and Abdulwahab were convicted criminalizes "financial transaction[s]" involving the "proceeds" of an illegal activity. *See* 18 U.S.C. § 1956(a)(1). But the statute does not define "proceeds," and so it leaves unclear whether this term means "receipts" or "profits" of the underlying crime. *Abdulwahab*, 715 F.3d at 529. If "proceeds" means "receipts," then a defendant engaged in underlying activity could be convicted under the money laundering statute "for paying the essential expenses of operating the underlying crime." *Id.* at 530. Accordingly, where a merger problem arises, we have interpreted the term "proceeds" to mean "profits" in order to avoid merger. In 2009, Congress amended the money laundering statute to define "proceeds" as "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity." Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111–21, § 2(f), 123 Stat. 1617, 1618 (codified at 18 U.S.C. § 1956(c)(9)). Because the Government charged Allmendinger with participating in illegal activities before this amendment, the prior version of the statute applies. *See Abdulwahab*, 715 F.3d at 531 n.8.

decided not to raise the merger argument, that argument had a near-certain likelihood of success. In a 2011 opinion — issued more than one year before Allmendinger's counsel filed his opening appellate brief — we explained that, "when the illegal activity includes money transactions to pay for the costs of the illegal activity, a merger problem can occur if the government uses those transactions also to prosecute the defendant for money laundering." *Halstead*, 634 F.3d at 279. We further clarified that "[a]n individual cannot be convicted of money laundering for paying the essential expenses of operating the underlying crime." *Id.* (internal quotation marks and citation omitted).

In *United States v. Cloud*, 680 F.3d 396 (4th Cir. 2012), which we issued roughly two months before Allmendinger's counsel filed his opening appellate brief, we revisited the merger issue.[3] Citing *Halstead*, we concluded that a merger problem existed, because the money laundering convictions at issue in *Cloud* were "based on payments to recruiters, buyers, and other coconspirators for the role each person played in the mortgage fraud scheme." *Cloud*, 680 F.3d at 406. Given our precedent at the time, the merger issue thus had a strong chance of success had Allmendinger's counsel raised it on direct appeal.

---

[3] We need not determine whether appellate counsel necessarily renders deficient performance for failing to consider a Fourth Circuit decision issued only two months before an opening brief is due. Our decision in *Halstead* already provided a strong basis for claiming that a merger problem existed. At oral argument, the Government resisted the idea that Allmendinger's appellate counsel was unaware of our decision in *Cloud*. *See* Oral Argument at 15:35–45, http://coop.ca4.uscourts.gov/OAarchive/mp3/17-6447-20180509.mp3 ("I don't necessarily think we can read [appellate counsel's] affidavit as saying [he] did not factor in subsequent Fourth Circuit decisions in *Cloud* and *Halstead*."). And Allmendinger's appellate counsel himself stated (in his declaration) that his decision not to raise the merger issue was strategic, not ill informed.

B.

While the merger issue had a near-certain chance of success on appeal, it is equally clear that the contentions raised by Allmendinger's appellate counsel did not. Indeed, the Government does not even argue that these contentions were stronger than the merger issue.

With respect to Allmendinger's conviction, appellate counsel claimed the district court erred in altering the superseding indictment before providing it to the jury. The revisions reflected a narrower conspiracy than the one charged in the superseding indictment. For instance, the amended superseding indictment moved up the date on which the conspiracy ended and reduced the losses suffered by A & O investors. *Allmendinger*, 706 F.3d at 336. Given these changes, appellate counsel claimed that the jury had convicted Allmendinger of a conspiracy materially different than the one charged in the indictment, in violation of the Fifth Amendment. Unlike the merger contention, this argument faced significant obstacles, as longstanding precedent holds that amendments to an indictment generally do not violate the Fifth Amendment if, like the amendments here, they *narrow*, rather than broaden, the charges. *See, e.g.*, *United States v. Miller*, 471 U.S. 130, 144 (1985).

Appellate counsel also attacked Allmendinger's sentence as substantively and procedurally unreasonable. Before us, the Government concedes — correctly, in our view — that challenging Allmendinger's sentence as substantively unreasonable was a long shot. Oral Argument at 18:25–40, http://coop.ca4.uscourts.gov/OAarchive/mp3/17-6447-

10

20180509.mp3. Thus, it is clear the merger argument was "clearly stronger" than the substantive unreasonableness claim. *See Mason*, 774 F.3d at 829.

With respect to procedural unreasonableness, appellate counsel first argued that the district court erred in calculating the amount of loss attributable to Allmendinger. Counsel principally claimed that although Allmendinger made misrepresentations to attract investors' money, he did not agree to join a criminal scheme that led those investors to lose money. *See Allmendinger*, 706 F.3d at 340–42. But we have long held that, for sentencing purposes, a defendant may be held accountable for the reasonably foreseeable acts of others taken in pursuit of the criminal activity that the defendant agreed to join. *See United States v. Gilliam*, 987 F.2d 1009, 1012–13 (4th Cir. 1993). That clearly extends to the losses at issue here.

Regarding the scope of the conspiracy, the district court found that Allmendinger was a principal architect of a fraudulent scheme pursuant to which A & O representatives lied to investors to attract their money and then lied again by telling investors that A & O would use their money to pre-pay policy premiums (ensuring the policies would not lapse) when in fact the money was used by Allmendinger as a personal "piggy bank." *Allmendinger*, 706 F.3d at 341. The court also found that Allmendinger knew, after he left A & O in 2007, that "the mode of operation" that he "had set in motion would continue." *Id.* at 340–42. In light of these findings, appellate counsel did not have a near-certain chance of success when arguing that the decision not to pay policy premiums, which occurred after Allmendinger left A & O and caused A & O investors to lose money, was

11

not a reasonably foreseeable act taken by co-conspirators in pursuit of the criminal activity Allmendinger had agreed to join.[4]

Appellate counsel also claimed that the sentence was procedurally unreasonable, because the district court did not address counsel's argument that the sentence created an unwarranted disparity with similarly situated defendants. *See* 18 U.S.C. § 3553(a)(6). But a court's explanation of its sentence "need not be elaborate or lengthy." *United States v. Carter*, 564 F.3d 325, 330 (4th Cir. 2009). Rather, the court need only "set forth enough to satisfy the appellate court that [the court] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). Here, the district court heard argument on unwarranted disparities from both sides and stated it was specifically considering this factor when imposing its sentence. Allmendinger's likelihood of prevailing on a claim of procedural error in these circumstances was thus far from certain.

---

[4] Appellate counsel further claimed that no losses could be attributed to Allmendinger because investors would not have lost money but for fraud by A & O's bond holder. *See Allmendinger*, 706 F.3d at 342–43 & 343 n.5. Counsel relied solely on *United States v. Hicks*, 217 F.3d 1038, 1049 (9th Cir. 2000), for the proposition that "losses caused by intervening, independent, and unforeseeable criminal misconduct of a third party" may not be used to calculate a defendant's loss amount. But other circuits have disagreed with this view. *See, e.g.*, *United States v. Jimenez*, 513 F.3d 62, 87–88 (3d Cir. 2008). Accordingly, prevailing on this point was no certainty. Additionally, appellate counsel claimed that even though the district court granted a variance, it erred in failing to consider a downward departure on the basis that the loss amount overstated the seriousness of the offense conduct. *Allmendinger*, 706 F.3d at 343. It is hard to conclude that this contention has any merit at all. *See United States v. Disodado-Star*, 630 F.3d 359, 364–66 (4th Cir. 2011).

C.

Even if the omitted merger issue was "clearly stronger" than the claims actually raised by appellate counsel, the Government contends that appellate counsel's performance was not deficient because it reflected a strategic decision. We will assume (but not decide) that counsel may perform adequately if he has a "strategic reason" for not raising a "clearly stronger" claim. Even so, counsel's actions still must pass the test of reasonableness; not every purported "strategic reason" will do. *See Bell*, 236 F.3d at 164; *see also United States v. Mannino*, 212 F.3d 835, 843 (3d Cir. 2000) (noting that a court need not credit counsel's affidavit if "sound reasons" exist for not doing so).

In his sworn statement, Allmendinger's appellate counsel explained that he considered raising the merger issue but ultimately opted not to do so, because he did not believe that reversal of the money laundering convictions would alter his client's sentence. Instead, he chose to "focus" the appellate court on "the strongest grounds for appeal that might result in the reversal of all counts or could have a significant impact on the sentence." The Government endorses this theory in this appeal.

This purported strategic rationale rests on a faulty foundation. Neither appellate counsel nor the Government explains why, at the time of Allmendinger's appeal, it was reasonable for counsel to believe that overturning two counts of money laundering (which together accounted for 160 months of a 540-month sentence) would have no effect in resentencing proceedings. We can discern none from the record. When sentencing Allmendinger, the court suggested a 540-month sentence was appropriate, and it imposed count-specific sentences (running consecutively) to reach that total. At that time, the court

13

did not in any way indicate that it would impose the same sentence in the absence of the two money laundering convictions.

The Government relies on the fact that, in these § 2255 habeas proceedings, the district court stated that it would have imposed the same sentence even if counsel *had* raised the merger problem on direct appeal and we had reversed the money laundering convictions. The Government also notes that, after we reversed the money laundering convictions in Abdulwahab's companion case on direct appeal, the district court imposed the same sentence. Reliance on these facts is misplaced, because we examine appellate counsel's performance at the time of the appeal, not in the light of subsequent events. *See Mason*, 774 F.3d at 828.

The Government also defends counsel's omission of the merger claim on the ground that reversing the money laundering counts would not have changed the applicable Guidelines range. Even if true, we reject the notion that it was reasonable for appellate counsel to assume, at the time of direct review, that the sentencing court would impose the same sentence in the face of the elimination of two counts of conviction.

Finally, we find it difficult to accept appellate counsel's purported strategic rationale in light of its application here. Appellate counsel asserts in his declaration that he wanted to focus on the arguments most likely to have a "significant impact" on Allmendinger's sentence. Implicitly, then, he maintains that he believed that prevailing on any claim that he did raise — including the argument that the district court procedurally erred in failing to adequately explain the sentence it imposed — was *more likely* to result in a "significant" sentence reduction on remand than reversal of the two money laundering counts. Tellingly,

14

neither appellate counsel nor the Government even attempt to explain why that would be so. It seems to us that this procedural-error claim in particular would be less likely to result in *any* change to the sentence than an argument that would lead to the reversal of the money laundering counts.

Because merger constituted a "clearly stronger" argument than the issues raised on direct appeal, and because appellate counsel does not identify any true strategic rationale for failing to raise merger, we hold that appellate counsel's performance was deficient.

III.

Under the second *Strickland* prong, Allmendinger must establish that his appellate counsel's deficient performance caused him prejudice. *See Strickland*, 466 U.S. at 687. The district court concluded that Allmendinger failed to show prejudice because, even if appellate counsel had raised merger on direct appeal (and secured a reversal of the money laundering convictions), the district court would have imposed the same sentence. The Government adopts this position before us, claiming that Allmendinger must show that a reversal of the money laundering convictions would have changed his sentence on remand.

But this is not the correct standard for assessing prejudice. Whether the sentence would change on remand does not control the *Strickland* prejudice inquiry in the context of alleged ineffective assistance *on appeal*. What matters is whether, had counsel raised the merger problem on direct appeal, we likely would have reversed the money laundering counts and remanded to the district court for resentencing. *See Smith v. Robbins*, 528 U.S. 259, 285–86 (2000) (noting that to show prejudice, the individual alleging ineffective

15

assistance of appellate counsel "must show a reasonable probability that, but for his counsel's [error], he would have prevailed *on his appeal*." (emphasis added)); *see also United States v. Rangel*, 781 F.3d 736, 745 (4th Cir. 2015).

As previously explained, had appellate counsel raised the merger problem on appeal, we likely would have reversed the money laundering convictions. *See Abdulwahab*, 715 F.3d at 529–32, 535. Allmendinger has established prejudice from his appellate counsel's deficient performance.

IV.

For the foregoing reasons, Allmendinger's appellate counsel provided constitutionally ineffective representation. We vacate the district court's contrary order and remand for further proceedings consistent with this opinion.[5] The judgment of the district court is

*VACATED AND REMANDED.*

---

[5] Allmendinger summarily claims that, if we find ineffective assistance of appellate counsel, it would violate his "right to due process to appear before a judge that has pre-decided the outcome of the hearing." Appellant Br. at 12. He offers no case law to support this contention. We reject it in the circumstances presented here.