**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**No. 19-4853**

UNITED STATES OF AMERICA,

        Plaintiff − Appellee,

    v.

GREGORY JAMES GARRISON, JR.,

        Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. John A. Gibney, Jr., Senior District Judge. (3:19−cr−00065−JAG−1)

Submitted: September 24, 2021                Decided: January 5, 2022

Before DIAZ and RICHARDSON, Circuit Judges, and FLOYD, Senior Circuit Judge.

Dismissed by unpublished opinion. Judge Diaz wrote the opinion, in which Judge Richardson and Senior Judge Floyd joined.

James R. Theuer, JAMES R. THEUER, PLLC, Norfolk, Virginia; David B. Smith, Nicholas D. Smith, DAVID B. SMITH, PLLC, Alexandria, Virginia, for Appellant. G. Zachary Terwilliger, United States Attorney, Alexandria, Virginia, Stephen E. Anthony, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

Gregory Garrison, Jr. appeals his conviction and sentence for carjacking and brandishing a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 2119 and § 924(c), respectively. The district court sentenced him to 264 months' imprisonment, including the 180-month statutory maximum on the carjacking charge and 84 months on the brandishing charge.

On appeal, Garrison raises a bevy of ineffective-assistance-of-counsel claims, stemming from his guilty plea and sentencing proceedings. But because the record doesn't conclusively establish counsel's ineffectiveness, these claims are premature. Garrison should raise these claims, if at all, in a 28 U.S.C. § 2255 motion. As a result, we dismiss the appeal without prejudice to Garrison's right to pursue his claims on collateral review.

I.

"We construe the evidence in the light most favorable to the Government, the prevailing party below." *United States v. Seidman*, 156 F.3d 542, 547 (4th Cir. 1998)

A.

In January 2019, Garrison approached an elderly man leaving work. With a firearm in hand, Garrison demanded the man's car keys. The man refused and walked away, but Garrison wrestled him to the ground. The man dropped his keys, which Garrison grabbed and used to flee in the man's car.

Law enforcement found the car abandoned a short distance from where Garrison had stolen it. Garrison was seen exiting the car after it had broken down. Officers took

Garrison into custody. At the time of his arrest, Garrison possessed a 9mm, semiautomatic pistol and what appeared to be crack cocaine. The victim later identified Garrison as the person who stole his car.

B.

A grand jury indicted Garrison on three counts: carjacking, brandishing a firearm during and in relation to a crime of violence, and possessing a firearm as a felon, in violation of 18 U.S.C. § 2119, § 924(c), and § 922(g)(1), respectively. He pleaded guilty to the carjacking and brandishing charges as part of a written plea agreement. In exchange, the government dismissed the felon-in-possession charge and offered Garrison immunity for any other crimes stemming from the conduct described in the indictment or statement of facts. The plea agreement also contained a waiver of Garrison's right to appeal his conviction or sentence, preserving only the right to claim ineffective assistance of counsel.

At the plea hearing, the district court confirmed that Garrison was not, at that time, being treated by a doctor or mental health professional. The court asked Garrison whether he had ever been treated for mental illness, to which he responded, "yes." This exchange followed:

THE COURT: What is that?

THE DEFENDANT: For like trying suicide and stuff.

. . .

THE COURT: Okay. What kind of treatment did you get when you tried to commit suicide?

THE DEFENDANT: I was in . . . Richmond Community Hospital, and they kept me in there like a week and then released me.

3

THE COURT: Did they give you any medicine?

THE DEFENDANT: Yes. I can't remember what type.

THE COURT: That was three years ago?

THE DEFENDANT: No, it was probably less than three years.

THE COURT: That was last November; is that right?

THE DEFENDANT: Probably little bit before then.

THE COURT: All right. What was your diagnosis if you can remember[?] If you knew.

THE DEFENDANT: Probably, I think just probably bipolar schizophrenic.

THE COURT: Schizophrenic. All right. Other than that, did you ever get any mental health treatment?

THE DEFENDANT: No, sir.

J.A. 27–29. The district court then turned to defense counsel and asked whether he doubted Garrison's competence. Counsel said he didn't have any such concerns. Nor did he think that Garrison had an intellectual disability or that he couldn't understand the proceedings. The court made no further inquiry into Garrison's mental health or his self-reported diagnosis of bipolar schizophrenia. At the end of the hearing, the court accepted Garrison's guilty plea.

In the presentence report, the probation officer recommended that Garrison be sentenced as a career offender based on two state-level felony convictions for drug-trafficking offenses. Applying the career-offender enhancement, the probation officer calculated Garrison's Guidelines range as 262 to 327 months' imprisonment. Garrison

4

didn't object to the report, but he moved for a downward departure and variance, arguing that his designation as a career offender overstated the seriousness of his criminal history.

At sentencing, Garrison's counsel reiterated his arguments for a departure or variance, emphasizing that Garrison's prior offenses were nonviolent. The district court denied the motion for a departure, and after analyzing the 18 U.S.C. § 3553(a) sentencing factors, also declined to vary downward. It sentenced Garrison to 264 months' imprisonment, comprising 180 months on the carjacking charge and a consecutive 84 months on the brandishing charge.

This appeal followed.

## II.

Garrison raises four ineffective-assistance-of-counsel claims, which fall outside his plea agreement's appellate waiver. Garrison contends his attorney was ineffective for (1) failing to investigate his diagnosis of bipolar schizophrenia; (2) failing to argue, in support of a sentence below the career-offender Guidelines range, that Garrison's prior distribution offenses involved personal-use quantities and thus were suspect under Virginia law, and that the court should have departed downward on public-policy grounds; (3) failing to object to allegedly impermissible double counting of the same act of brandishing a firearm; and (4) advising Garrison to accept the plea agreement where he says there was no strategic advantage in doing so.

We review ineffective-assistance-of-counsel claims de novo. *United States v. Faulls*, 821 F.3d 502, 507 (4th Cir. 2016). But on direct appeal, we'll only consider such

5

claims if "an attorney's ineffectiveness *conclusively* appears on the face of the record." *Id.* (emphasis added). Because Garrison can't meet this heightened standard for each of the claims above, we decline to reach them. Garrison should pursue these claims, if at all, on collateral review.

A.

The Sixth Amendment guarantees effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The *Strickland* test for ineffective-assistance-of-counsel claims is twofold. First, a defendant must show that counsel's performance was deficient, meaning it "fell below an objective standard of reasonableness" as measured against "prevailing professional norms." *Id.* at 687–88. "A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (cleaned up). But *Strickland* does "impose[] upon counsel a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Gray v. Branker*, 529 F.3d 220, 229 (4th Cir. 2008) (cleaned up).

Second, a defendant must prove they were prejudiced by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The test for prejudice varies based on the type of proceeding from which the claim stems. For claims challenging a conviction following a guilty plea, a "defendant must show that there is a reasonable

6

probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). For claims related to sentencing, prejudice exists where the evidence is "sufficient to undermine confidence in the outcome actually reached at sentencing." *Gray*, 529 F.3d at 234 (cleaned up).

B.

1.

First, Garrison argues that his attorney was deficient for failing to investigate his diagnosis of bipolar schizophrenia, which Garrison disclosed at the plea hearing. Garrison claims he was prejudiced by this failure because an investigation would have revealed a nonfrivolous competence argument and because his diagnosis might have supported a downward departure.

If counsel in fact failed to investigate Garrison's self-reported diagnosis of bipolar schizophrenia, that may be deficient performance under prevailing professional norms. *See id.* at 229 (finding deficient performance where, "without making reasoned strategic decisions, counsel ignored [] red flags and failed to investigate for mental health evidence or consider introducing evidence on that issue"). But the record doesn't conclusively reveal whether such an investigation took place, making this precisely the sort of case in which "it would be unfair to adjudicate the issue without any statement from counsel on the record." *United States v. DeFusco*, 949 F.2d 114, 120 (4th Cir. 1991).

Without this information, Garrison can't conclusively establish deficient performance. Nor does the record confirm Garrison's self-proclaimed diagnosis or suggest

7

what, if any, relationship it had to the offense conduct here.[1] So, on the existing record, Garrison can't conclusively establish prejudice.

## 2.

Second, Garrison says his counsel was ineffective for failing to make three arguments in support of his motion for a downward departure or variance from the career-offender Guidelines range. He claims counsel should have (a) argued that his drug-distribution offenses were based on personal-use quantities; (b) emphasized that his convictions were suspect under Virginia law; and (c) argued the district court should refuse to apply the enhancement as a matter of policy.

Counsel could have argued the mitigating circumstances of Garrison's state-level convictions more thoroughly. But the district court expressly acknowledged at sentencing that Garrison's underlying convictions didn't involve "major amounts of drugs" and refused to vary downward on that basis. J.A. 66. We can't foreclose the possibility that Garrison's more compelling arguments on appeal would have swayed the district court. But the court's express reluctance to depart or vary downward on a substantially similar basis means Garrison can't conclusively establish prejudice.

## 3.

Third, Garrison claims counsel was ineffective for failing to object to the district court's double counting of the same act of brandishing a firearm. "Double counting occurs

---

[1] Although the presentence report discusses Garrison's mental and emotional health, it doesn't mention a diagnosis of bipolar schizophrenia.

when a provision of the Guidelines is applied to increase punishment on the basis of a consideration that has been accounted for by application of another Guideline provision or by application of a statute." *United States v. Reevy*, 364 F.3d 151, 158 (4th Cir. 2004). It is generally permissible unless the Guidelines expressly forbid it. *Id.*

Garrison argues the double-counting prohibition in application note 4 to U.S. Sentencing Guideline § 2K2.4 barred the district court from applying a two-level carjacking enhancement alongside his § 924(c) conviction because the government relied on his use of a firearm as the requisite force for carjacking. *See* U.S.S.G. § 2K2.4 cmt. n.4 ("If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for possession, brandishing, use, or discharge of an explosive or firearm when determining the sentence for the underlying offense.").

Even assuming Garrison's double-counting argument is correct, he concedes his Guidelines range would have been the same without the carjacking enhancement. Rather, his argument for prejudice turns on the success of his second claim alleging ineffective assistance of counsel. In other words, Garrison claims that, had his attorney successfully argued for a variance or departure below the career-offender Guidelines range, the two-level enhancement would have mattered in his overall calculation. But Garrison can't conclusively establish ineffective assistance on that claim, and so this claim too is premature.

4.

Finally, Garrison argues that his counsel was ineffective for advising him to sign a plea agreement, including a waiver of appellate rights, with no strategic advantage over an open plea. He claims the government's only concession was to dismiss Garrison's felon-in-possession charge, and a conviction on that charge wouldn't have altered his Guidelines range.[2]

That may be true, but the government's dismissal of the felon-in-possession charge still benefitted Garrison. For example, we've recognized that the presence of another charge may affect whether a court sentences on the lower or higher end of the Guidelines range. *See United States v. Allmendinger*, 894 F.3d 121, 130 (4th Cir. 2018). Additionally, the plea agreement offered immunity from prosecution for any other offenses arising from the same facts, and Garrison had been arrested with what appeared to be crack cocaine in his possession.

It's possible that had Garrison's attorney advised him that accepting the plea agreement was unlikely to affect his sentence, he would have chosen to preserve his appellate rights by entering an open plea. But such a claim isn't supported by the current record. So, Garrison must pursue it, if at all, on collateral review.

---

[2] Garrison also argues, for the first time in his reply brief, that the plea agreement lacked consideration because the § 922(g) charge in the indictment was defective under *Rehaif v. United States*, 139 S. Ct. 2191, 2220 (2019) (holding that, in a § 922(g) prosecution, "the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm"). But Garrison waived this argument by failing to raise it in his opening brief. *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017).

### III.

For the reasons given, we dismiss the appeal.

*DISMISSED*